## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,         ) | |
| ) | Case No. 8:05CR237 |
| Plaintiff,      ) | |
| ) | |
| vs.                              ) | |
| ) | **REPORT AND** |
| PATRICK SMITH,                   ) | **RECOMMENDATION** |
| ) | |
| Defendant.      ) | |

This case is before the court on defendant Patrick Smith's Motion to Suppress (#36), wherein he moves the court for an order suppressing all evidence obtained by law enforcement following the March 31, 2005 traffic stop of a vehicle in which he was a passenger. Specifically, Smith alleges the stop was made without probable cause or reasonable suspicion as required by the Fourth Amendment to the United States Constitution.

The government resists the motion, alleging (1) the defendant lacks standing to contest the stop; (2) the stop was an investigatory stop based on reasonable suspicion; and (3) when the defendant fled he abandoned his right to assert a violation of the Fourth Amendment.

The motion was heard on September 23, 2005 and the Transcript of hearing (#44) was filed on October 6, 2005. The court allowed the defendant until October 14, 2005 to file a post-hearing brief, and the government until October 21, 2005 to file a responsive brief, at which time the motion was deemed submitted.

## FACTUAL BACKGROUND

Rachael Spurgeon testified that she is employed as a deputy by the Sarpy County Sheriff's Department. On March 31, 2005 at approximately 6:45 a.m., she was working in western Sarpy County when she received a dispatch call requesting that she check out a call of a suspicious vehicle in the area of 204th and Buffalo Road. Dispatch also informed her that the caller, who identified himself/herself by name and address, described the vehicle as a blue Toyota or Honda with Iowa plate 541NTO occupied by two males and a female (6:4-14). Spurgeon responded to the area. After failing to make contact with the vehicle, she attempted to check with the reporting party to get additional information; however, no one was home (6:19-23).

Spurgeon testified that a month earlier at about the same time in the morning she had received a similar call involving a suspicious vehicle in the area of 204th and Buffalo and that she checked out the area, but did not have contact with the vehicle (7:12-19). Spurgeon admitted that on the earlier call she had not been given a license plate number. She continued checking the area of 204th and Buffalo. She described the location as a rural farm area made up of dirt roads and not heavily populated.

Spurgeon testified that at approximately 8:00 a.m. she was traveling on Fishery Road 3 to 5 miles from where the vehicle was first reported, when she observed a northbound vehicle coming towards her matching the description and with Iowa plate 541NTO. The vehicle contained two males in the front seat and what appeared to be a female in the back

seat (8:7-9:1). She turned her vehicle around and began to follow the vehicle, at which time it began to accelerate. Spurgeon activated her overhead lights and observed the occupants throwing items out of the passenger side of the vehicle (9:2-11). She observed the items to be white and powdery, noting that it exploded and went everywhere. As the vehicle continued on additional items, which she could not identify, were thrown from it. After pursuing for 1-2 miles, the vehicle pulled into an open field next to a fence by a wooded area and the two males exited the vehicle running, jumped over a fence and ran into a wooded area (9:18-25).

Spurgeon observed the female exited the back seat of the vehicle and dump what looked like a coffee filter into the air, causing a white powdery substance to go everywhere. Spurgeon ordered the female to get on the ground and placed her under arrest.

On cross-examination Spurgeon testified that while she had no personal conversation with the person who made the call to dispatch, she was aware that they left their name and address and that the address was in the area of 204th and Buffalo (12:2-11). Spurgeon admitted that her contact with the vehicle occurred approximately two hours after she received the call from dispatch (12:15-18) and that she had not observed any criminal activity prior to activating her overhead lights (13:6-16).

On redirect examination Spurgeon testified that there had been criminal activity, a burglary to a residence, in the area in the past (13:23-14:3).

## LEGAL ANALYSIS

### A. Standing

As a passenger, the defendant may "challenge the stop and detention and argue that the evidence should be suppressed as fruits of illegal activity." *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998); *accord United States v. Ameling*, 328 F.3d 443, 447 n.3 (8th Cir.), *cert. denied*, 540 U.S. 961 (2003).

### B. Stop of the Vehicle

"For purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest." *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001); *see United States v. Wheat*, 278 F.3d 722, 726 (8th Cir. 2001), *cert. denied*, 537 U.S. 850 (2002). As such, a traffic stop is governed by the principles of *Terry v. Ohio*, 392 U.S. 1 (1968). *Jones*, 269 F.3d at 924. Under *Terry,* 392 U.S. at 21-22, a police officer may conduct an investigative stop if the officer has a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity. *See also Delaware v. Prouse*, 440 U.S. 648, 663 (1979).

Reasonable suspicion requires a particularized and objective basis for suspecting the person stopped of criminal activity, but the level of suspicion required for a *Terry* stop is less demanding than that for probable cause. *United States v. Gonzalez*, 220 F.3d 922, 925 (8th Cir. 2000) (internal quotations and citations omitted). In *United States v. Arvizu*, 534 U.S. 266, 273 (2002), the Supreme Court stressed that reviewing courts must look at "the totality

of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. "This process allows officers to drawn on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* To justify a *Terry* stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Id.* at 274; *United States v. Sokolow*, 490 U.S. 1, 7 (1989). "A reasonable suspicion may be justified even if there are innocent explanations for a defendant's behavior when the circumstances are considered in the totality." *United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1999); *see also United States v. Arvizu*, 534 U.S. at 274 ("*Terry* . . . precludes this sort of divide-and-conquer analysis."). "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir.), *cert. denied*, 516 U.S. 872 (1995).

In this case, the officer began to follow the defendant's vehicle because a vehicle matching that description was the subject of a citizen complaint approximately two hours earlier. She had been unable to interview the caller, who was not at home, and had not observed any criminal activity prior to activating her overhead lights. Deputy Spurgeon did not activate the overhead lights until after the vehicle accelerated away from her. At that

-5-

point, the occupants began flinging items from the passenger side of the car. The first item thrown from the car "looked like it exploded and white powdery stuff went everywhere." The vehicle eventually pulled into an open field next to a fence by a wooded area and the two males exited the vehicle running, jumped over a fence and ran into a wooded area.

The court must reject the defendant's argument that he was "seized" when Deputy Spurgeon activated her overhead lights in an attempt to stop the vehicle. For one to be seized within the meaning of the Fourth Amendment, either physical force must be used or, where force is absent, there must be submission to the assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *accord United States v. Swindle*, 407 F.3d 562 (2d Cir.), *cert. denied*, 126 S. Ct. 279 (2005); *see Brower v. County of Inyo,* 489 U.S. 593, 597 (1989) (a seizure occurs if "there is a governmental termination of freedom of movement through means intentionally applied."). "A Fourth Amendment seizure does not occur when a police officer turns on his ... lights and thereby signals the driver of a vehicle to pull over. For a seizure to occur, there must be 'an acquisition of physical control.'" *Willhauck v. Halpin*, 953 F.2d 689, 716 (1st Cir. 1991) (quoting *Brower*, 489 U.S. at 597).

In general, a *Terry* stop must be justified at its inception. *See Terry*, 392 U.S. 1, 18-19 (1968). In *Swindle*, based on subsequent Supreme Court precedent, the Second Circuit reluctantly concluded that reasonable suspicion may be premised upon events occurring after a person is ordered to stop but before he or she is physically apprehended: "*Hodari D.* strongly implies–without explicitly holding–that an unreasonable order to stop does not

-6-

violate the Fourth Amendment and that the grounds for a stop may thus be based on events that occur after the order to stop is given." 407 F.3d at 568 (citing *Hodari D.*, 499 U.S. at 629).

In this case, the evidence does not show that the defendant submitted to Deputy Spurgeon's initial show of authority, i.e., the flashing lights signaling the driver to stop the vehicle. Rather, the driver did not stop the vehicle at the deputy's command, and defendant and the driver fled from Deputy Spurgeon after the vehicle stopped. For these reasons, I find that the defendant was not seized, for Fourth Amendment purposes, until he was physically apprehended.

By the time the defendant was seized, Deputy Spurgeon had observed the occupants of the fleeing vehicle throwing items from the vehicle, causing "explosions" of white powder along the roadway. "Headlong flight–wherever it occurs–is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). These factors, together with the existence of a citizen's complaint involving this vehicle, provided reasonable suspicion to detain the defendant.

### C. Abandonment

The court also agrees with the government that the defendant abandoned any interest he may have had in the vehicle. Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers. *United States v. Tugwell*,

125 F.3d 600, 602 (1997), *cert. denied*, 522 U.S. 1061 (1998). The determination of abandonment "'is to be made in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of the property.'" *Id*. (quoting *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986)). "A warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment." *United States v. Tugwell*, 125 F.3d at 602; *accord United States v. James*, 353 F.3d 606, 615-16 (8th Cir. 2003).

Based on the totality of the circumstances, I conclude that defendant's actions were inconsistent with any continued expectation of privacy in the vehicle. *See Tugwell*, 125 F.3d at 603.

## RECOMMENDATION

For all the reasons discussed above,

**IT IS RECOMMENDED** that defendant Patrick Smith's Motion to Suppress (#36) be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.

**DATED November 7, 2005.**

        **BY THE COURT:**

        **s/ F.A. Gossett**
        **United States Magistrate Judge**